## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THOMAS BEYERSDORF,

     Plaintiff,                                          Case no. 2:22-cv-12656
                                        Hon.

v.

UNITED AIRLINES, INC.

     Defendant.

---

SALVATORE PRESCOTT
PORTER & PORTER, PLLC
Attorneys for the Plaintiff
Jennifer Salvatore (P66640)
105 E. Main St.
Northville, MI 48167
salvatore@spplaw.com

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff Thomas Beyersdorf, individually, by and through his attorneys, SALVATORE PRESCOTT PORTER & PORTER, and for his Complaint states as follows:

## PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Thomas Beyersdorf ("Beyersdorf") is, and was at all times relevant to this action, a resident of the City of Novi, County of Oakland, State of Michigan.

2.      Defendant United Airlines, Inc. ("United") is a corporation headquartered in Chicago, Illinois.  United regularly conducts business in Wayne County, Michigan through its operation of flights out of Detroit Metropolitan Airport, located in Wayne County.

3.      Jurisdiction over the claim and the Defendant herein exists pursuant to 28 U.S.C. §1331 as the claim arises pursuant to a treaty of the United States of America, the Convention for the Unification of Certain Rules for International Carriage by Air, signed in Montreal Canada, on May 28, 1999, which is more commonly known as the "Montreal Convention."

4.      Venue is proper because the events giving rise to Plaintiff's claims occurred within the Eastern District of Michigan.

## COMMON ALLEGATIONS

5.      Plaintiff reincorporates each and every preceding paragraph as though fully restated herein.

6.      In or around the spring of 2022, Plaintiff Beyersdorf purchased six business class tickets on United Airlines round trip from Detroit to Rome (with a lay-over in Newark, New Jersey on the out-bound flight).  The tickets, which in total cost $28,657.62, were for the following individuals: Thomas Beyersdorf; Judith Beyersdorf; Joseph Salvatore; Jennifer Salvatore; Lucie Salvatore; and Charles Salvatore.

7.     The record locator for the tickets is PK6TZ6. The date of the scheduled departure was Saturday, June 25, 2022.

8.     The purpose of the trip was to join a Disney Cruise Ship in Rome for a family vacation and 25th wedding anniversary celebration for the Salvatores.

9.     Knowing the staffing shortages and other problems the airline industry has been facing this year, Beyersdorf booked the tickets to depart one day earlier than necessary and with a four-hour layover in Newark on the outbound flight. Beyersdorf and family planned to spend one night in Civitavecchia (the port city for Rome) before boarding the cruise ship on Monday, June 27, 2022.

10.    On Thursday, June 23, 2022, having observed from multiple news media that flight delays and cancellations through Newark airport were rampant, Beyersdorf went on the United website about 10:00 a.m. to check the flight status on the 6/25/22 2:30 p.m. flight from Detroit to Newark.  He observed that this daily 2:30 p.m. flight from Detroit to Newark had been cancelled every day so far that week, and was listed as "diverted" for the flight on Saturday 6/25/22.

11.    Accordingly, Beyersdorf immediately called United reservations and pointed out this situation, but was informed that his 2:30 p.m. Saturday flight was still showing "on time" in the United reservation system.  The agent was unable to explain what "diverted" meant.  Beyersdorf called again about 4:00 p.m. that day and was given the same explanation. The United agent denied any knowledge of

what "diverted" meant.  On Friday morning, 6/24/22, Beyersdorf again called United reservations with the same query.  This time he was told that "diverted" probably meant an aircraft change being processed, or it was a "computer glitch."

12.     Still concerned, Beyersdorf called United again about 4:00 p.m. on Friday, 6/24/22, the day before departure and asked that all six tickets on the 2:30 pm Detroit to Newark flight on Saturday be changed to the next earlier flight to Newark that day, which departed Detroit at approximately 11:30 a.m.  He was told that changing only one leg of the trip was impossible.  He would have to cancel and rebook the entire trip, and was advised not to do so because it would cancel the Newark to Rome segment as well, and it was unlikely that the seats would then still be available if he did so.

13.     On Saturday, June 25, 2022 Plaintiff and family arrived at the United ticket counter at Detroit Metropolitan Airport at noon -- two and a half hours prior to their scheduled departure on the 2:30 Detroit to Newark flight.  They were immediately informed that their 2:30 p.m. flight to Newark had indeed been cancelled, but that there was a 5:30 p.m. flight available that would get them into Newark one hour before their scheduled flight to Rome.

14.     The United ticket agent attempted to rebook Beyersdorf's tickets onto the 5:30 p.m. flight, but in so doing made a mistake and cancelled the entire outbound journey, including the Newark to Rome segment of the flight.  The agent

then attempted to contact her support desk for help, but had no phone at her terminal and had to wait until the ticket agent at the adjoining terminal got off the phone with the help desk so that she could use her phone to speak to the help line. This took so long that Plaintiff got on his own cell phone and contacted United Airlines reservations himself, and then let the agent talk to United's help desk on his cell phone.  This process took approximately thirty minutes.

15.     Ultimately the agent returned the cell phone to Beyersdorf, and he was advised by the online United Airlines representative that indeed the entire outbound reservation, including the Newark to Rome portion had been cancelled by the agent. He was advised that the seats could not be retrieved and that United now had no seats on any flight to Rome that would get him and his party to their destination before the cruise ship was due to depart.   The six business class tickets that Beyersdorf had purchased and secured from United months prior had been sold online to other customers in that 30-minute period.

16.     Indeed, the United ticket agent had done exactly what Plaintiff was told by United customer service the day prior not to do.  Her attempt to reschedule the first leg of the trip had cancelled Plaintiff's entire outbound journey.  She clearly was untrained, incompetent, and negligent in the performance of her duties in doing exactly what Plaintiff was told not to do.

17.    At that point, Plaintiff was told that while he could re-book on a later United flight, there were not six seats available on any United flight that could get he and his party into Rome prior to the ship's scheduled departure on 6/27/22.  The cost of the pre-paid European cruise for six people exceeded $50,000.  Plaintiff also had pre-paid for hotel rooms in Rome, and car service to the cruise terminal.

18.    Plaintiff thus immediately began a search on the internet for six tickets that could get the family to Rome in time for the cruise.  New tickets were secured on Air Canada, departing Detroit early the next morning.  This required an unplanned stay at the Detroit airport Westin hotel for an early morning departure on 6/26/22.

19.    Late in the evening on Saturday, June 25, 2022, Plaintiff upon attempting to check in to the Air Canada flights on his computer, learned that there had been a problem with the booking of these flights (which had been done via Orbitz) and the tickets in fact had not been secured by Orbitz.  (Although he had been charged for them – money that was later refunded to him).

20.    At that point, no airline had six available seats to Rome that would allow Plaintiff and his party to make their cruise departure. Between the hours of midnight and 2 AM on Sunday, June 26, Plaintiff was able to secure two round trip tickets to Rome (via New York) on Delta airlines in the amount of $25,247.14. Record locator for these tickets is HYXN5O.

21.     There were no available round-trip tickets available at that point on any airline for the remainder of the party—so Plaintiff purchased four additional one-way tickets to Rome for 6/26/22.  The outbound portion of these tickets involved flying Delta Airlines from Detroit to Boston (costing $2,754.40 for four tickets, record locator HCPFEG) and then from Boston to Rome via Dublin on Aer Lingus at a price of $19,320.12 (record locator 2L2KV2).[1]

22.     Rather than arrive into Rome two days early, the Plaintiff and his family arrived into Rome having not slept most of the nights of Saturday, June 25th or Sunday June 26th and with only about an hour before their scheduled check-in on the Disney cruise ship on Monday, June 27th.

23.     Once on board the ship, Plaintiff spent most of the first day of the cruise trying to secure refunds of his United and Air Canada tickets and attempting to purchase the remaining four return tickets, which he eventually was able to do on Delta Airlines at a combined price of $20,228.71 (record locators GENQLP and GERE2L) plus foreign transaction fees on the credit card of an additional $456.12.

24.     While the cost of the unused United and Air Canada tickets was eventually refunded to Plaintiff, the total spent on the last-minute airplane tickets

---

[1] The four return tickets from Rome to Detroit that Plaintiff eventually secured cost another $20,228.71.

(including foreign transaction fees) was $68,006.49. This is $39,348.87 more than the original United tickets that Plaintiff had purchased.

25. In addition, Plaintiff forfeited the deposit of three hotel rooms (2 persons each room) in Civitavecchia for the night of 6/26/22 in the amount of $272.33, and a pre-arranged van service from the airport to Civitavecchia in the amount of $151.68.

26. Total economic damages from United's delay in transport and the reckless misconduct of the gate agent was $39,772.88. Receipts for these additional costs are attached hereto as Ex. A.

27. United is liable under the Montreal Convention for the costs associated with this delay because United did not take all reasonable measures to avoid damage to Plaintiff. Among other things, United failed to properly train its staff so as to prevent the inadvertent cancellation of Plaintiff's Newark to Rome tickets.

## COUNT I: DAMAGES OCCASIONED BY DELAY
## ARTICLE 19 OF THE MONTREAL CONVENTION

28. Plaintiff reincorporates each and every preceding paragraph as though fully restated herein.

29. The United States and Italy are both signatories to the Montreal Convention, an international treaty providing a comprehensive liability regime governing claims arising from international air carriage.

30.     Under Article 19 of the Montreal Convention, a carrier "is liable for damages occasioned by delay in the carriage by air of passengers, baggage or cargo" if the carrier fails to prove that it took all measurers that could be reasonably required to avoid the damage.

31.     Defendant cancelled Plaintiff's initial Detroit to Newark flight and then mistakenly cancelled Plaintiff's entire Detroit to Rome reservation at the last minute, on the same day of departure, due to the reckless misconduct of United's ticket agent.

32.     As a result of Defendant's delay in the carriage of passengers, Plaintiff has sustained damages, including, but not limited to, the cost of purchasing six new last-minute tickets to Rome—at a cost well in excess of the original tickets; additional unplanned nights at the Detroit airport hotel; and forfeited hotel and car deposits in Rome.

## **RELIEF REQUESTED**

WHEREFORE for all of the foregoing reasons, Claimant seeks the following relief:

   a.  compensatory damages, including economic damages;

   b.  damages for inconvenience; and

   c.  all other relief, equitable and otherwise, allowed by law and deemed appropriate by the Court.

Respectfully submitted,

SALVATORE PRESCOTT &
PORTER, PLLC

Dated:  November 3, 2022          By:     /s/ Jennifer B. Salvatore
                                                  Jennifer B. Salvatore (P66640)
                                                  Attorneys for Plaintiff
                                                  105 East Main St.
                                                  Northville, MI 48167
                                                  (248) 679-8711

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THOMAS BEYERSDORF,

     Plaintiff,                                  Case no. 2:22-cv-12656

                                                                   Hon.

v.

UNITED AIRLINES, INC.

     Defendant.

SALVATORE PRESCOTT
PORTER & PORTER, PLLC
Attorneys for the Plaintiff
Jennifer Salvatore (P66640)
105 E. Main St.
Northville, MI 48167
salvatore@sppplaw.com

---

## DEMAND FOR TRIAL BY JURY

     NOW COMES the Plaintiff, by and through his attorneys, SALVATORE

PRESCOTT PORTER & PORTER, PLLC, and hereby demands a trial by jury in

the above-entitled cause of action.

                                      Respectfully submitted,
                                      SALVATORE PRESCOTT PORTER
                                      & PORTER, PLLC

Dated November 3, 2022     By:     /s/ Jennifer B. Salvatore
                                        Jennifer B. Salvatore (P66640)
                                        Attorneys for Plaintiff
                                        105 East Main St.
                                        Northville, MI 48167
                                        (248) 679-8711